ADOPTION OF PIERCE.[1]

Nos. 02-P-853 & 02-P-1490.

Franklin. February 6, 2003. - June 16, 2003.

Present: CYPHER, MASON, & McHUGH, JJ.

*Adoption,* Care and protection, Dispensing with parent's consent, Visitation
rights. *Parent and Child,* Care and protection of minor, Dispensing with
parent's consent to adoption. *Minor,* Care and protection, Adoption, Visita-
tion rights.

A sibling lacked standing to appeal a decree dispensing with parental consent
to the adoption of her brother. [345-346]
A sibling seeking postadoption visitation with her brother pursuant to G. L.
c. 119, § 26, had no constitutionally protected liberty interest in maintain-
ing a family relationship with her sibling [346-348]; moreover, the judge
did not abuse her discretion in not holding an evidentiary hearing on
visitation [348], and there was no merit to the argument that the judge's
finding regarding visitation (made during proceedings to dispense with
parental consent to the adoption of the brother) infected her later denial of
the sibling's motion for visitation [349-350].

PETITION filed in the Franklin & Hampshire Counties Division
of the Juvenile Court Department on April 10, 1997.

The case was heard by *Lillian Miranda,* J., and a motion for
visitation, filed on September 10, 2001, was also heard by her.

*Sandy S. Glynn* for Louise.

*Brian Pariser* for Department of Social Services.

*Jonathan D. White* for Pierce.

CYPHER, J. Louise (born on May 23, 1987), is the half-sister
of Pierce (born on March 8, 1993). Louise appeals from a decree
dispensing with consent to the adoption of Pierce, claiming that
the Juvenile Court judge violated Louise's rights by failing to

---

[1] A previous appeal, No. 01-P-1207, involving Pierce and Louise was
dismissed by this court. Both names are pseudonyms.

order postadoption visitation with Pierce as part of the decree.[2] Louise also appeals the denial of her motion for sibling visitation, brought under G. L. c. 119, § 26. Louise raises several constitutional, statutory, and common law arguments common to both appeals. We dismiss Louise's appeal of the decree dispensing with parental consent to the adoption of Pierce. We affirm the denial of the motion for sibling visitation.

1. *Procedural background.* The Department of Social Services (DSS) filed a care and protection petition, under G. L. c. 119, § 24, on behalf of Louise. The judge granted temporary custody of Louise to DSS. Subsequently, DSS added Pierce to the care and protection petition, and the judge granted temporary custody of Pierce to DSS. The children were represented by the same attorney. The parties stipulated that the children were in need of care and protection, and the judge ordered that they continue in the custody of DSS. At some point in January, 1999, sibling visitation was stopped because, according to DSS, it harmed Pierce.

DSS established a goal of long-term, substitute care for Louise and a goal of adoption for Pierce. In June of 1998, the judge allowed DSS to amend the pleadings to dispense with parental consent to Pierce's adoption. See G. L. c. 210, § 3. In separate documents, on August 17, 1998, the parties stipulated (1) that Pierce was in need of protection and that trial on the petition to terminate parental rights would occur as scheduled; and (2) that Louise would remain in long-term, substitute care.[3]

On October 25, 1999, trial concluded on the petition to dispense with consent to the adoption of Pierce. On that day, the children's attorney, anticipating that the next issue to be resolved would be sibling visitation, moved for leave to withdraw from his representation of Louise because the

---

[2]The parents do not appeal.

[3]Louise had a long history of psychological problems that included hospitalizations and antipsychotic medications. Just prior to the filing of the care and protection petition, Louise had set a fire in a supermarket and had been "completely out of control, tipping over displays, biting and spitting." When she could not be stabilized in her initial foster placement, Louise was hospitalized again and then transferred to another facility for a medication review. Following that review, she was transferred to a residential placement.

children's interests conflicted on this matter. The judge allowed the motion and appointed new counsel for Louise.

On November 22, 1999, counsel for Louise moved to reopen the evidence to submit additional evidence regarding posttermination and postadoption visitation between Louise and Pierce. The judge denied the motion, observing that the issue of sibling visitation had not been the subject of the trial. The judge advised Louise that she could present evidence on the issue of sibling visitation at her permanency plan hearing[4] on January 3, 2000.

At the permanency plan hearing, the judge ordered DSS to produce an updated sibling visitation plan and noted that if Louise was not satisfied with that plan, she could bring the matter to the court and be heard. Louise took no action.

On February 18, 2000, the judge issued findings of fact, rulings of law, and orders committing Pierce to the custody of DSS and terminating his parent's rights. The judge did not determine the issue of sibling visitation, but did find that Pierce had been psychologically harmed by continued contact with Louise and that it had been appropriate to terminate visitation in January, 1999. The judge observed that any future contact between the siblings should only take place if it was safe and appropriate for Pierce. On February 22, 2000, the judge issued a decree dispensing with parental consent to Pierce's adoption. Louise filed a notice of appeal.

On May 15, 2000, Louise also moved under G. L. c. 119, § 26, for posttermination and postadoption sibling visitation and for funds for an expert witness. DSS filed an updated plan regarding sibling visitation. Louise took no action in response to DSS's visitation plan.

On September 18, 2000, the judge held a permanency hearing in regard to Pierce. On September 19, 2000, the judge determined that sibling visitation was not in Pierce's best

[4]General Laws c. 119, § 29B, provides for permanency plan hearings and periodic review for all children in the care of DSS within twelve months of the original commitment, grant of custody, or transfer of responsibility to DSS and every twelve months thereafter. In essence, the judge offered Louise an evidentiary hearing on sibling visitation in the context of an already scheduled § 29B hearing. See Rule 2(H)(7) of the Uniform Rules for Permanency Hearings, Trial Court Rule VI (2003).

interests and denied Louise's motion for posttermination and postadoption visitation. Louise did not appeal.

One year later, on September 10, 2001, Louise again moved for sibling visitation. On September 17, 2001, the judge denied the motion. Louise appeals from that denial.

2. *Louise's appeal from the order dispensing with parental consent to adoption of Pierce pursuant to G. L. c. 210, § 3.* Louise claims that the judge erred in failing to enter an order for postadoption sibling visitation as part of the decree dispensing with parental consent to Pierce's adoption. She argues that she has a fundamental right to sibling visitation which cannot be fulfilled after Pierce is adopted. We conclude that Louise may not appeal the decree dispensing with parental consent to the adoption of Pierce and that any interest Louise has in her sibling relationship can be adequately addressed under G. L. c. 119, § 26, even after Pierce is adopted.[5] See *Adoption of Galvin*, 55 Mass. App. Ct. 912, 912-914 (2002).

The judge was not required to make orders regarding postadoption sibling visitation part of the decree which dispensed with consent to the adoption of Pierce. General Laws c. 119, § 26, as amended in 1997, provides:

> "The court shall, whenever reasonable and practical, and based upon a determination of the best interests of the child, ensure that children placed in foster care who are separated from siblings who are either in other foster or pre-adoptive homes or in the homes of parents or extended family members, have access to, and visitation rights with, such siblings throughout the period of placement in the care and custody of the commonwealth, or subsequent to such placements, if the children or their siblings are separated through adoption or long-term or short-term placements in foster care."

The statute further requires that the visits be implemented "through a schedule of visitations or supervised visitations" and that "[p]eriodic reviews shall be conducted, so as to evaluate

---

[5]The Juvenile Court judge questioned whether Louise had standing to appeal the judge's decree dispensing with parental consent to the adoption of Pierce. It is not clear from the record whether the judge resolved that issue.

the effectiveness and appropriateness of the visitations between siblings placed in care." In addition, the statute provides that any child over twelve years of age may request visitation with her adopted siblings. G. L. c. 119, § 26. There is no suggestion in the statute that the order must enter at the same time as the entry of a decree to terminate parental rights.[6]

Louise has no legally cognizable interest in the proceeding to dispense with the consent of Pierce's parents to his adoption. She does not, therefore, have standing to appeal the decree. *Cf. Adoption of Mary*, 414 Mass. 705, 713 (1993) (mother whose rights were terminated did not have standing to challenge trial strategy of children's counsel regarding postadoption visitation). Louise argues, however, that she suffered from conflicted counsel during the proceeding to dispense with consent to the adoption of Pierce and that she did not receive notice prior to the proceeding on the termination of parental rights that the judge would decide sibling visitation issues. As we have concluded that Louise did not have standing to challenge the G. L. c. 210, § 3, proceeding, we need not address these arguments. In any event, Louise labors under a misunderstanding: though the judge found that visits adversely affected Pierce and any future contact "must be safe and appropriate for" Pierce, she did not issue an order in regard to sibling visitation and, in fact, specifically left the issue open for future resolution when Louise had new counsel.[7] See part 3(d), *infra*. It was within the judge's discretion to proceed in this manner.[8]

3. *Motion for postadoption sibling visitation pursuant to*

---

[6]From our review of the record, it does not appear that there was any court order that addressed sibling visitation prior to entry of the decree in regard to Pierce. See *Adoption of Galvin*, 55 Mass. App. Ct. at 913-914; G. L. c. 119, §§ 23, 26. However, prior to January, 1999, Louise and Pierce engaged in nearly monthly one-half hour visits.

[7]We do, however, note that, in January, 1999, when DSS halted all sibling visits, it was apparent that Louise's and Pierce's interest diverged in regard to sibling visitation. At that point, the attorney should have informed the judge of the conflict, and new counsel should have been appointed for Louise. Louise's counsel could have then raised the issue in her care and protection case. See G. L. c. 119, § 26. Consequently, it was about one year after visitation was discontinued, when Louise was appointed new counsel, that she attempted to raise the issue in court.

[8]Alternatively, the judge could have held a joint proceeding addressing both Pierce's and Louise's cases.

*G. L. c. 119, § 26.* Louise argues that (a) she was entitled to sibling visitation unless the Commonwealth could prove by clear and convincing evidence that sibling visits would be harmful to Pierce; (b) she was denied an evidentiary hearing; (c) the judge was not impartial; and (d) her finding in the termination proceeding infected her motions for visitation under G. L. c. 119, § 26, which deprived her of sibling visitation.

a. *The standard.* Louise argues that she has a fundamental liberty interest, protected by the United States Constitution and the Massachusetts Declaration of Rights, in maintaining a family relationship with her sibling through postadoption visitation and that this fundamental right requires that she be granted visitation, unless the Commonwealth can prove by clear and convincing evidence that sibling visits would be harmful to Pierce.

Louise's right to seek an order for visitation is grounded in G. L. c. 119, § 26. Such right, however, has not been found to be a constitutionally protected liberty interest requiring greater protection than in regard to other family relationships. See *Adoption of Vito,* 431 Mass. 550, 564 (2001).

The United States Supreme Court has never concluded that there exists a fundamental liberty interest in the sibling relationship. When addressing the sibling relationship, the Supreme Judicial Court has rejected the argument that the sibling relationship is entitled to any heightened protection, *Adoption of Hugo,* 428 Mass. 219, 230-231 (1998), and has concluded that while it is "preferable that siblings be raised together . . . the weight to be accorded sibling relations in the application of the best interests standard . . . 'will vary with the circumstances.' " *Adoption of Willow,* 433 Mass. 636, 651 (2001), quoting from *Adoption of Hugo, supra* at 231.

Furthermore, visitation orders concerning other relationships have been evaluated by the best interests standard. See *Youmans* v. *Ramos,* 429 Mass. 774, 785 (1999) (court may order visitation between child and de facto parent when it is in best interests of child); *Adoption of Vito,* 431 Mass. at 563-567 (postadoption visitation with biological mother); *Blixt* v. *Blixt,* 437 Mass. 649, 657-660 (2002), cert. denied, 537 U.S. 1189 (2003) (grandparents where parents are unmarried); *R.J.A.* v. *K.A.V.,* 34 Mass.

App. Ct. 369, 373 (1993) (best interest of child standard should be predominant factor in determining what rights, if any, putative father had). It would make little sense to accord the sibling relationship greater protections than are provided other family relationships.

b. *Evidentiary hearing.* Louise claims that she was improperly denied the right to an evidentiary hearing on sibling visitation. We conclude, however, that the judge did not improperly deprive Louise of an evidentiary hearing. General Laws c. 119, § 26, does not require an evidentiary hearing. The decision to hold an evidentiary hearing is a matter committed to the discretion of the judge. Cf. *Adoption of Nicole,* 40 Mass. App. Ct. 259, 264 (1996) (evidentiary hearing not mandated in every instance, especially when change of circumstance is insufficient to grant new trial). We will not reverse the decision absent a demonstration that the judge abused her discretion. See *ibid.* Indeed, here it appears that Louise had many opportunities to claim an evidentiary hearing, but did not.[9] In fact, Louise did not appeal the denial of her first motion for sibling visitation. Under these circumstances, the judge did not abuse her discretion by concluding that Louise's second motion for sibling visitation did not warrant an evidentiary hearing. Cf. *Adoption of Nicole, supra.*

c. *Impartial decision maker.* Louise argues that the judge was

---

[9]For example, Louise had an opportunity to present evidence at the permanency hearing on January 3, 2000. Instead, Louise agreed to the plan proposed by DSS to have the children's therapists meet to determine how the children could have contact in a therapeutic setting, which would then be incorporated into each child's permanency plan. The parties understood that, if Louise was dissatisfied with the result of this process, she could seek review in court.

On May 12, 2000, Louise moved for sibling visitation, but chose not to have the motion heard. She also withdrew her motion for expert witness funds. On June 19, 2000, the judge held a hearing on Louise's motions, but she again elected not to present evidence concerning sibling visitation.

On September 18, 2000, the judge held a permanency hearing with regard to Pierce. On September 19, 2000, the judge determined that sibling visitation was not in Pierce's best interests, and the judge denied Louise's motion for posttermination and postadoption visitation.

On January 22, 2001, the judge held another hearing on Louise's permanency plan. She did not attempt to present new evidence on sibling visitation.

unfairly prejudiced against sibling visitation with Pierce. This claim was not raised below, therefore, we need not consider it on appeal. See *Adoption of Mary*, 414 Mass. at 712. See also *Commonwealth* v. *Gogan*, 389 Mass. 255, 259 (1983) (question of disqualification is left to judge's discretion). If we were to consider it, however, we would reject it, as the record contradicts Louise's claim.

d. *The adverse finding regarding sibling visitation.* Although the focus of the proceeding concerning Pierce was not the sibling relationship, and the judge did not make an order regarding sibling visitation a part of the termination decree, the judge did make a finding regarding sibling visitation. See part 2, *supra*. The judge found as follows:

> "[Pierce] had some visitation and telephone contact with his sister, [Louise] while she resided at the Three Rivers Program. The contact resulted in [Pierce] suffering flashbacks of abuse perpetuated against him by [Louise]. As a result, [the foster parents] appropriately stopped the contact between [Pierce] and [Louise]. Any future contact between [Pierce] and [Louise] must be safe and appropriate for [Pierce]."

Louise does not challenge the finding as clearly erroneous and does not claim that the judge otherwise abused her discretion by denying sibling visitation. Instead, Louise argues that this finding was made while she and Pierce were jointly represented and, therefore, she did not have an opportunity to challenge the evidence supporting the finding. She also contends that the finding infected the judge's ruling on Louise's motion in her care and protection case. See G. L. c. 119, § 26.

As Louise acknowledges, she did have an opportunity to challenge that finding posttrial. Her argument that the judge's earlier finding infected the judge's later denial of Louise's motion is without merit. In essence, her argument appears to be another version of her contention that the judge was biased. Having concluded that there is no evidence to support that contention, we conclude that the judge addressed the materials submitted to her in regard to sibling visitation fairly and impartially.

Finally, the fluid nature of the best interests of the child

standard requires that all evaluations of such nature be made based on the current best interests of the child. Thus, if and when Louise brings another petition under G. L. c. 119, § 26, for sibling visitation, the court will determine whether visitation is currently in Pierce's best interests.

Louise's appeal of the decree dispensing with parental consent to the adoption of Pierce is dismissed for lack of standing. The denial of her motion for sibling visitation is affirmed.

*So ordered.*