NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11918

ADOPTION OF DOUGLAS (and five companion cases[1]).

February 17, 2016.

Adoption, Standing, Visitation rights, Care and protection. Parent and Child, Adoption, Care and protection of minor. Minor, Visitation rights, Care and protection. Practice, Civil, Care and protection proceeding, Assistance of counsel. Supreme Judicial Court, Superintendence of inferior courts.

These cases are appeals of consolidated care and protection petitions concerning six children -- Douglas, Tom, Brian, Mark, Cole, and Frank. The appeals are brought by the biological mother of the six children; by the biological father of the two oldest children (father I) -- Douglas and Tom; and by four of the children -- Douglas, Tom, Brian, and Mark. They appeal from the provisions of decrees of the Juvenile Court denying parental visitation after termination of the parental rights of the mother, father I, and the biological father of the four younger children (father II) -- Brian, Mark, Cole, and Frank.[2] The Appeals Court, in a memorandum and order pursuant to its rule 1:28, dismissed the appeals of the mother and father I. It concluded that neither had standing to challenge the orders concerning visitation because their parental rights had been terminated after the consolidated hearings, pursuant to G. L. c. 119, § 26, and G. L. c. 210, § 3, were concluded, and they

_____

[1] Adoption of Tom; Adoption of Brian; Adoption of Mark; Adoption of Cole; and Adoption of Frank. The children's names are pseudonyms.

[2] The biological father of the four younger children (Brian, Mark, Cole, and Frank) is not a party to this appeal.

had not appealed from the entry of the termination decrees. See Adoption of Douglas, 87 Mass. App. Ct. 1118 (2015). With respect to the appeal of the four children, the Appeals Court affirmed the decrees of the Juvenile Court. Id. We granted further appellate review, and affirm the Juvenile Court judge's decrees.

Background. The Department of Children and Families (department) filed a care and protection petition on behalf of Douglas, Tom, Brian, and Mark, alleging neglect due to substance use and domestic abuse of all four children. The department subsequently filed a care and protection petition on behalf of Cole and Frank, and the two petitions were consolidated. On March 3, 2010, the mother, father I, and father II each stipulated to his or her current unfitness and that their respective children were in need of care and protection.[3]

On June 3 or 4, 2013, each of the parents submitted a written stipulation acknowledging his or her current unfitness, agreeing to the issuance of a decree terminating his or her respective parental rights; waiving the right to trial on the merits of the care and protection petitions; and waiving the right to appeal "as to unfitness and the termination of parental rights." The stipulations of father I and the mother also expressly reserved "the right to appeal any decision rendered as to the proposed plans of adoption for each child." They did so with the apparent understanding and agreement that entry of decrees terminating their parental rights would be deferred until "the conclusion of the[] hearings" concerning placement of the children and parental and sibling visitation, that they would retain the right to participate in those placement hearings, and that they could appeal from any adverse result. The Juvenile Court judge conducted colloquies and accepted the stipulations,[4] but neither found the parents unfit nor entered decrees terminating their parental rights at that time.

---

[3] The biological father of Douglas and Tom (father I), was convicted of murder in the first degree in 2005, and is presently serving a life sentence without the possibility parole.

[4] During the colloquy with father I, the judge stated, "The only thing that you would have the right to appeal would be if the plan is something different than what you propose."

The judge thereafter conducted a hearing in the consolidated cases that extended over the course of seven days, beginning on June 3, 2013, and concluding on June 20, 2013. Thereafter, on October 1, 2013, the judge issued an order adjudicating, pursuant to G. L. c. 119, § 26, and G. L. c. 210, § 3, the parents to be unfit; ordering the entry of decrees terminating their respective parental rights; approving the plans of adoption submitted by the department;[5] declining to order either posttermination or postadoption visitation between the children and their respective biological parents; and ordering sibling visitation. He issued 449 findings of fact and twenty-nine conclusions of law on February 10, 2014. The mother, father I, and the four oldest children (Douglas, Tom, Brian, and Mark) appealed.

Standing. Until parental rights have been terminated by entry of a decree, parents have the right to participate in proceedings to determine issues such as placement and visitation arrangements concerning their children.[6] See Adoption of Gillian, 63 Mass. App. Ct. 398, 408 (2005); Adoption of Dora, 52 Mass. App. Ct. 472, 474-476 (2001). In this case, the mother and father I had a right to (and did in fact) participate in the "best interests" hearings because, although they had stipulated to unfitness and agreed to the entry of decrees terminating their respective parental rights, no decree terminating those rights had entered at that time. See Adoption of Malik, 84 Mass. App. Ct. 436, 441 n.10 (2013); Adoption of Gillian, supra at 408 (parents "had the opportunity to raise and preserve [the visitation] issue prior to termination of their parental rights, but failed to do so"); Adoption of Dora, supra at 476-477. See also G. L. c. 119, § 26 (b) (4); G. L. c. 210, § 3 (b) ("entry of [a decree] shall have the effect of terminating the rights" of parent).

---

[5] The judge initially deferred approval of the plan regarding placement with respect to one child. He subsequently approved the plan.

[6] Although detailed written findings are not required when a parent has consented to the entry of a decree terminating his or her parental rights, a judge nonetheless must determine that the stipulation was knowing and voluntary, that the parent is currently unfit, and that termination is in the child's best interests. See Adoption of John, 53 Mass. App. Ct. 431, 437-438 (2001).

It is only after "a decree enters terminating parental rights . . . [that] the parent whose rights have been terminated is without standing to determine the child's future," Adoption of Malik, 84 Mass. App. Ct. at 438, although he or she may press an appeal challenging the adjudication of the termination proceeding. Id. at 439. See Adoption of Rico, 453 Mass. 749, 757 n.16 (2009); Adoption of Helen, 429 Mass. 856, 858 (1999); Adoption of John, 53 Mass. App. Ct. 431, 433 (2001). The department's suggestion that the biological parents are presently without standing to challenge on appeal the judge's visitation orders, because their parental rights were terminated after the hearings concluded, is without merit. See Adoption of Rico, supra (where "visitation order . . . was part of the adjudication of a termination proceeding to which the father was a party," biological father has standing to challenge visitation order on appeal). The judge resolved the fitness, termination, placement, and visitation issues in the same decision, "as part of the adjudication of a termination proceeding" to which the biological parents were parties.[7] Id.

---

[7] In Adoption of Rico, 453 Mass. 749, 750 (2009), both parental fitness and visitation were contested issues. After a multiday hearing, the Juvenile Court judge terminated parental rights, dispensed with parental consent to adoption, and approved, but did not order, parental or sibling visitation. Id. at 749-750. The father and child appealed. Id. at 750. The Appeals Court upheld the decision to terminate parental rights and the order concerning parental visitation, but remanded for further consideration of sibling visitation. Id. On further appellate review, the father chose not to press his appeal from the termination order. Id. at 753. See Spooner Road, LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 693 n.3 (2012), quoting Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). With respect to standing, this court rejected the suggestion by the Department of Children and Families (department), similar to the argument it presses here, that because the biological father did not appeal the termination decree, he lacked standing to challenge the visitation order. Adoption of Rico, supra at 757 n.16.

The biological father in this case and in Adoption of Rico participated as of right in proceedings culminating in a decision that both ordered the termination of their parental rights and resolved visitation and other issues. In the circumstances, father I has the same standing as the biological father in Adoption of Rico, who chose not to pursue an appeal of the termination of his parental rights in this court.

Where the factual basis for termination of parental rights is not contested, deferring the entry of a termination decree until the completion of a "best interests" hearing on issues such as adoption and visitation under G. L. c. 210, § 3, see Adoption of Dora, 52 Mass. App. Ct. at 476, permits the proceedings to be expedited, while preserving a parent's right to participate in the hearing, and maintaining the parent's standing to challenge the resulting adoption, visitation, or similar order on appeal. In such circumstances, "the substantive point of focus in reviewing the validity of the order" is the child's best interests.[8] Adoption of Rico, 453 Mass. at 757 n.16. See Adoption of John, 53 Mass. App. Ct. at 435 n.7 ("A number of factors could influence a parent to make this decision [to agree to the entry of a termination decree], including the recognition of an inability to parent, coupled with the realization that agreement might bring to a speedier conclusion a process that is often protracted, thereby giving the child a certain and stable future"). The mother and father I have standing to press their appeal.

Ineffective assistance of counsel. For the first time on appeal, the mother contends that she received ineffective assistance of counsel at trial. In particular, she claims that trial counsel failed to notify the judge prior to the colloquy that the mother's stipulation to unfitness and agreement to the entry of a decree terminating her parental rights purportedly was conditioned on the placement of all six of her children with relatives. As we have said, "'the preferred method of resolving factual disputes concerning the conduct of the original trial' is for the aggrieved party to file a motion for a new trial.

---

[8] Although a parent's right to participate in a termination proceeding and to challenge on appeal any adverse ruling that may result may be limited or waived by stipulation, those rights may not be expanded to confer standing where it is otherwise lacking. See Adoption of Malik, 84 Mass. App. Ct. 436, 440 (2013) (reservation of rights in stipulation "does not confer upon [the mother] the right to challenge the judge's determination, after entry of the decree terminating her parental rights"). The respective stipulations of the mother and father I waived their appellate rights only "as to unfitness and the termination of parental rights," and expressly reserved the right to appeal from a "decision rendered as to the proposed plans of adoption for each child."

Absent exceptional circumstances, we do not review claims of ineffective assistance of counsel for the first time on appeal." Care & Protection of Stephen, 401 Mass. 144, 150 (1987), quoting Commonwealth v. Saferian, 366 Mass. 89, 90 n.1 (1974). There being nothing in the record to suggest that this case presents extraordinary circumstances, and the factual basis for such a claim not being demonstrated adequately on the record before us, we decline to do so here.[9]

Parental visitation. Once a biological parent has been found unfit to care for a child, "[t]ermination denies [him or her] physical custody, as well as the rights ever to visit, communicate with, or regain custody of the child." Petition of Catholic Charitable Bur. of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption, 392 Mass. 738, 741 (1984), quoting Santosky v. Kramer, 455 U.S. 745, 749, 753 (1982). Where it is in the child's best interests, however, a judge has broad discretion to grant posttermination or postadoption visitation. See Adoption of Vito, 431 Mass. 550, 562 (2000) (discretion "grounded in the over-all best interests of the child, based on emotional bonding and other circumstances of the actual personal relationship of the child and the biological parent, not in the rights of the biological parent nor the legal consequences of their natural relation"); Adoption of Warren, 44 Mass. App. Ct. 620, 626 n.5 (1998) ("The decision as to whether to allow postadoption [or posttermination] visitation is more a question of what is in the interests of the child, rather than one of the rights of the parent"). With respect to posttermination visitation in particular, "[t]he purpose of such contact is not to strengthen the bonds between the child and his biological mother or father, but to assist the child as he negotiates, often at a very young age, the tortuous path from one family to another." Adoption of Vito, supra at 564-565. See Adoption of Zander, 83 Mass. App. Ct. 363, 366 (2013). See also Adoption of Rico, 453 Mass. at 754-755. The judge did not

_____

[9] The appellate record is inadequate to support the mother's claims. See Adoption of Mary, 414 Mass. 705, 713 (1993); Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344 (1994). There is, for example, no suggestion in the transcript of the colloquy that the mother's stipulation was conditional, and the stipulation expressly provides that no promises were made to induce it. Although there was evidence that the mother's preference was for familial placements, it falls short of the type of evidentiary facts that might establish that her stipulation was conditioned on fulfilment of such a provision.

abuse his discretion in declining to order parental visitation in this case.

The department's plans for the children proposed that "the four oldest [children] should have visits with their mother"; that father I would have continued visitation with the two oldest children; and that visitation between the two middle children and father II should be considered with caution.[10]  The judge's extensive factual findings make clear that he thoroughly considered evidence of the children's bonds with their respective parents.  With respect to the mother, he acknowledged that the oldest child, Douglas, had a bond with the mother, but concluded that a visitation order was not in Douglas's best interests.  Among other things, the judge found that the mother continually failed to maintain appropriate boundaries with Douglas.  The judge also found that there was no significant bond between the mother and her other five children.  There is sufficient evidence to support the judge's determination that orders for visitation with the mother were not in the children's best interests.

With respect to visitation with father I, the judge found that there was no evidence of a significant relationship or bond between him and the two oldest children.  Before June 28, 2010, Tom (who turned seven years old in July, 2010) had never met father I, and Douglas (who was at that time nine years and five months old) had last seen father I when he was a baby.  Douglas visited father I approximately six times before trial, and his last visit was in July, 2012, almost one year before trial.  Tom visited with father I five times from birth until trial.  Although there was some evidence that visits between father I and the two children went well, in the absence of evidence of a significant existing bond, we cannot say that the judge abused his discretion in concluding that an order requiring visitation was not in the children's best interest.[11]  See Adoption of Vito,

---

[10] The department did not propose that the two youngest children have visitation with the mother.  The two youngest children support the judge's orders with respect to parental visitation.

The department also proposed continuing sibling visitation.  The judge's orders concerning sibling visitation are not at issue on appeal.

[11] A judicial order requiring posttermination visitation is "a reflection of the judge's determination that, at that time,

431 Mass. at 563.  In the circumstances, the judge properly declined to order visitation with father I.

The two middle children, Brian and Mark, likewise sought an order requiring posttermination and postadoption visitation with father II.  The judge found, however, that the two children were experiencing stability for the first time, and that their behavior issues had improved.  He also found that there had been no contact with father II for the two years prior to trial, and that there was no evidence of a significant bond with the children.  He concluded that visitation "based on emotional bonding and other circumstances of the actual personal relationship of the child and the biological parent," Adoption of Vito, 431 Mass. at 562, was not in the best interests of the children.  See Adoption of Edgar, 67 Mass. App. Ct. 368, 371 (2006).  The record provides support for this determination; the judge did not abuse his discretion.[12]

_____

the child's interests would best be served by such an order." Adoption of Rico, 453 Mass. at 756.  It "is in a sense a provisional order.  The judge presiding over the termination case has no crystal ball, and cannot know whether the child's best interests will later change because of changed circumstances; current context is critical."  Id. at 758.  Until adoption occurs, the department may still arrange for visitation if it deems visits to be in a child's best interests, and a child may periodically petition the court for review of the department's visitation decisions if the child believes that its decisions have not been in his or her best interests.  See G. L. c. 119, §§ 26, 29B.

[12] The children contend that the judge held them to an impermissibly high standard of proof, requiring them to prove by "clear and convincing evidence" that visitation is in their best interests.  Regardless of how the judge's order was phrased, however, the underlying subsidiary factual findings amply support the judge's determination that (except between Douglas and the mother) there was no "significant, existing bond" with the biological parent.  Adoption of Vito, 431 Mass. at 563. Absent evidence of such a bond, a judge properly may conclude that continued contact -- after termination of the legal right of an unfit parent -- is not currently in the child's best interest, and that an order requiring visitation is not warranted.  See Adoption of Ilona, 459 Mass. 53, 63-64 (2011); Adoption of Vito, supra.  With respect to Douglas, although the judge acknowledged a bond with the mother, the subsidiary factual findings support the conclusion that a visitation order

Conclusion.  Prior to the entry of a decree terminating parental rights, a parent has standing to participate in proceedings to determine issues such as placement and visitation of a child.  Where orders involving termination, placement, and visitation are issued as part of the same adjudication of a termination proceeding, a parent has standing to press on appeal any challenge that he or she has not expressly waived to that adjudication.  There being no error in the judge's decrees in this case, we affirm the orders denying posttermination or postadoption parental visitation.

So ordered.

Craig T. Spratt for Douglas & others.
Warren M. Yanoff for father I.
Diana Cowhey McDermott for the mother.
Robert J. McCarthy, Jr., for Cole & another.
Lynne M. Murphy for Department of Children and Families.
Jaime L. Prince & Andrew L. Cohen, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

---

was not in Douglas's best interests based on the mother's "demonstrated . . . inability to comprehend and establish appropriate boundaries," including exposing him to repeated instances of sexual activity and domestic violence.