The mother appeals from a decree entered by a Juvenile Court judge terminating her parental rights to the child. On appeal, the mother contends that (1) comments made by the judge prior to the close of evidence prejudiced her and warrant a new trial, (2) the judge failed to consider the emotional bond between the mother and child in determining the number of posttermination visits, and (3) there was not clear and convincing evidence of unfitness and therefore her parental rights should not have been terminated. We affirm.
Background. We draw on the detailed findings of fact made by the judge below, which find ample support in the record. In October, 2014, the case was opened for services following reports of domestic violence between the mother and Adam Jones (a pseudonym), with whom the mother had been in a long-term relationship. At the time, the mother stated she was leaving Jones's residence to avoid exposing the child to domestic violence; however, in what would be a pattern throughout the case, she returned to Jones's residence with the child a few days later, minimizing concerns regarding violence in the home. In an interview with the Department of Children and Families (department) during that time period, the mother admitted to a history of substance use disorder. She began a Suboxone treatment, but failed to use the Suboxone pills as prescribed.
In December, 2014, while the case was still open, Jones and his son found the child rubbing the mother's back in Jones's residence as she lay unconscious from an overdose. "[A] burnt spoon with white residue [was] on the table next to" the mother's bed. When first responders arrived, the child was crying while her mother was unresponsive in another room. The mother was administered Narcan, and when she became responsive, she admitted to snorting heroin. At the hospital, she tested positive for heroin, benzodiazepines, amphetamines, marijuana, and cocaine. The mother initially stated that she had used only heroin that evening. After some pressing, however, the mother admitted that she had also used cocaine and smoked marijuana and that she lacked prescriptions for the Xanax and Adderall, which she had also taken. She minimized her overdose and refused both in-patient and out-patient treatment options.
The day after the mother's overdose, the department filed the present petition pursuant to G. L. c. 119, § 24. The child was removed on an emergency basis, and temporarily placed in a department foster home. In January, 2015, the child was placed in her current kinship placement with her paternal great aunt.
In May, 2016, a hearing was held on the department's petition. The mother stipulated to her unfitness.[3] The judge found the mother to be unfit, and the child was found to be in need of care and protection. At the time, the judge did not terminate parental rights.
In June, 2016, the department filed a motion, requesting a review and redetermination hearing and seeking an order terminating the mother's parental rights. Following the review and redetermination hearing, which was held in February and March of 2017, the judge found that the mother suffers from persistent substance use disorder. The judge recognized that, at times, the mother has made substantial progress towards addressing these issues; however, she has a demonstrated pattern of struggling with relapse and an inability to maintain sobriety.
Moreover, the judge also found that the mother has not been candid regarding her substance use disorder. She has minimized her relapses, and relayed conflicting information regarding her intravenous use of heroin. The department has been unable to verify much of the mother's participation in service plan tasks aimed at assisting the mother to overcome her substance use challenges because the mother has not provided, or revoked, releases with her providers. The mother has also failed to provide significant information, such as a complete list of her prescribed medications.
The judge also found that what the department has been able to verify demonstrates that the mother's engagement in substance use disorder treatment has been inconsistent and incomplete. Additionally, in the two years before the hearing, the child's foster mother expressed concerns regarding the mother's presentation in person and during video calls, including the mother's "head moving downward as if she were going to sleep and her eyes rolling."
Furthermore, the judge found that the mother's significant criminal history is indicative of her continued substance use disorder and addiction.[4] Hypodermic needles and heroin have been seized from the mother during some of her arrests. Her demeanor during one arrest is consistent with her admission of having used heroin.
The judge also relied on substantial evidence that the mother's long-term relationship with Jones has been fraught with domestic violence to which the child has been exposed. The mother has at times denied the domestic violence, but also has at times admitted the violence in the relationship and its ill effects on the child. She has demonstrated a pattern of returning to the relationship and Jones's residence, and exposing the child to the violence. The child confirmed that she was present during multiple episodes of domestic violence between the mother and Jones, and reported that the mother asked her not to talk about them.
The judge found that the mother was not able to obtain stable, appropriate housing for the child. When she was not living with Jones, the mother resided in North Eastham, at a combination residence and business, which the mother inherited from her father after his death in 2014. The residence was a former garage converted into a studio apartment; it required major renovations, and was not zoned for residential living. The mother has not allowed the department to inspect the living space, and she has prevented the child's foster mother from entering.
The judge also found that the mother's compliance with her service plan tasks has been inconsistent. At times, she has made substantial progress; but, especially during the months when her business is closed, she has been unable to maintain sobriety and has struggled with domestic violence issues.
The mother's visits with the child have been reduced to one hour every other week as a result of the mother's noncompliance with the department's conditions for the visitations. During one unsupervised visit, for example, she kept the child for three days even though she was supposed to return the child within twenty-four hours. In January, 2016, after she received approval for another unsupervised visit, the mother took the child to Jones's residence even though this violated the terms of the visitation set by the department. Thereafter, visits were supervised by the foster mother, who reported that the mother was tardy picking up and dropping off, and failed to comply with the conditions of the visits. As a result, visits were reduced to one hour per week in the community and, following additional failures of the mother to comply with visitation conditions, visits were reduced to one hour every other week. The child's emotional and behavioral issues were exacerbated following contact with the mother.
In April, 2017, the judge filed a memorandum of decision, terminating the mother's parental rights. The mother appealed. In July, 2017, the judge entered his written findings of fact, conclusions of law, and order, considering the requisite factors under G. L. c. 210, § 3 (c ), finding factors (ii), (iii), (iv), (vi), (vii), (viii), (ix), (x), (xii), and (xiv) applicable.
Discussion. a. The judge's comments following the parties' announced settlement. The mother first maintains that she was deprived of the right to fair procedures in light of the comments made by the judge after the first hearing day, prior to the close of evidence and in response to the parties' announcement that they had reached a settlement. See Adoption of Tia, 73 Mass. App. Ct. 115, 122-123 (2008). Specifically, the judge indicated that, based on the evidence he had heard so far, "there's certainly enough evidence to keep [the child] in the custody of the Department of Children and Families at this time. I didn't feel as though there was enough evidence to terminate your parental rights." He also stated that, although he had not heard all the evidence, he "had an idea as to how this thing was going to go. And I don't think it would have been favorable for you to get on the witness stand and start answering questions to which you don't really want to answer." The judge also commented that it would not favor the mother that the child did not live with her, stating also that the court process was designed so that if the mother did "not put her daughter first, [her parental] rights ultimately [would] be terminated." The parties expected the settlement to be finalized and the mother to be ready for a colloquy in March, 2017. Instead, in March, 2017, the hearing continued.[5]
The mother raised no objection to the judge continuing to preside over the case despite the earlier comments. As such, the mother waived her present claim. See Adoption of Pierce, 58 Mass. App. Ct. 342, 348-349 (2003). "[A] party, knowing of a ground for requesting disqualification, cannot be permitted to wait and decide whether he likes the subsequent treatment that he receives." Demoulas v. Demoulas Super Mkts., Inc., 428 Mass. 543, 549 (1998). Thus, the issue was not preserved and will only be considered under exceptional circumstances, none of which is present here.[6] See Adoption of Douglas, 473 Mass. 1024, 1027 (2016) ; Adoption of Mary, 414 Mass. 705, 713 (1993).
b. Visitation. The mother next contends that the judge failed to consider the emotional bond between her and the child in deciding that two visits per year would be in the child's best interests. Judges have broad discretion in awarding visitation between a child and a biological parent whose rights have been terminated. See Adoption of Ilona, 459 Mass. 53, 63 (2011). In order to determine whether to grant posttermination parental visitation, the judge must consider whether visitation is in the child's best interests and whether an order of visitation is necessary to protect the child's best interests. See id. The decision to grant visitation rights is not based on the rights of the biological parent, but rather on what is in the best interests of the child. Adoption of Warren, 44 Mass. App. Ct. 620, 626 n.5 (1998).
The mother's visitation had been substantially reduced and became more limited over time due to the mother's inability to comply with the department's conditions. The mother's visits exacerbated the child's emotional and behavioral issues. And, contrary to the mother's contention, the judge considered the bond between the mother and the child in awarding two visits per year. On this record, we cannot say that the judge abused his discretion. See Adoption of Douglas, 473 Mass. at 1029 ; Adoption of Ilona, 459 Mass. at 63-64.
c. Unfitness. "To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests." Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). On appeal, "[w]e give substantial deference to a judge's decision that termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. at 59. "Parental unfitness must be determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age." Adoption of Mary, 414 Mass. at 711. When determining parental unfitness, a judge's decision is "not a moral judgment or a determination that the mother and father do not love the child." Adoption of Bianca, 91 Mass. App. Ct. 428, 432 n.8 (2017). Rather, the judge must determine "whether the parents' deficiencies or limitations place the child at serious risk of peril from abuse, neglect, or other activity harmful to the child" (quotation omitted). Id.
The record supports the judge's finding that the mother was unfit. The mother has a long history of substance use disorder. While she has made substantial progress at times, the judge appropriately considered the mother's relapses and her continued inability to remain sober, her minimization of her substance use disorder, and her unwillingness to provide the department with sufficient access to her records to verify her compliance with her treatment tasks. See Adoption of Serge, 52 Mass. App. Ct. 1, 6-8 (2001). The judge also properly considered the danger to the child from the domestic violence between the mother and Jones, which the mother has had trouble ending despite her acknowledgement that the violence has an ill effect on the child. See Adoption of Talik, 92 Mass. App. Ct. 367, 374 (2017). The mother lacks appropriate and stable housing for the child, and the judge properly considered this in connection with his decision. See Adoption of Anton, 72 Mass. App. Ct. 667, 676 (2008). Furthermore, the child has behavioral and emotional needs that require a level of attention that the judge determined the mother was unable to provide. Indeed, the mother has minimized the child's special needs. See Petitions of Dep't of Social Servs. to Dispense with Consent to Adoption, 20 Mass. App. Ct. 689, 697-698 (1985). On this record, we cannot say that the judge abused his discretion or committed a clear error of law in finding that the mother's inability to provide for the child's needs rendered her unfit, that this unfitness would continue into the foreseeable future, and that the best interests of the child would be served by termination of the mother's parental rights.[7]
Decree affirmed.

The father was not present at the hearing and has not been present throughout the case. He has been absent from the child's life and has not made himself available to the department. The judge terminated his parental rights, and he has not appealed.

The mother has been arrested for a range of offenses including possession of a class A substance (heroin), larceny over $250, breaking and entering, operating a motor vehicle while under the influence of drugs, marked lanes violation, and operating to endanger. At the time of the hearing, she was on probation.

The record is silent as to why the settlement did not come to fruition.

The mother argues that the fact that settlement was reached presents a special circumstance. Assuming arguendo that the mother is correct, this fails to excuse her failure to object after the settlement had failed to come to pass.

The mother also contends that exhibit nos. twenty-three through thirty-three, which were proffered by the department, were not properly admitted in evidence and therefore should not have been relied on by the judge in his decision. The mother objected to only exhibit no. thirty-three. Thereafter, the judge said that he would take the exhibits into consideration de bene, proceed with trial, and indicate in his written decision whether the exhibits would be admitted. In his decision, the judge did not rely on exhibit no. thirty-three. By not objecting to the other proffered exhibits, the mother waived any objection on appeal. Adoption of Pierce, 58 Mass. App. Ct. at 348-349. Moreover, the exhibits at issue did not prejudice the mother because they were cumulative of the other evidence already in the case. Adoption of Paula, 420 Mass. 716, 727 (1995).