On appeal, the father contends that the Juvenile Court judge abused his discretion in declining to order visitation between the child and the father following the termination of the father's parental rights. We affirm.
Discussion. Once it is established that a parent is unfit and parental rights have been terminated,[3] the decision whether to grant posttermination visits is left to the sound discretion of the trial judge. Adoption of Ilona, 459 Mass. 53, 63 (2011). A trial judge may order such posttermination contact only where it is in the best interests of the child.[4] Adoption of Vito, 431 Mass. 550, 553 (2000). Visitation may be warranted where there is a significant, existing bond between a child and a biological parent, and such visitation might assist the child as she negotiates the transition from one family to another. Adoption of Douglas, 473 Mass. 1024, 1028 (2016). If the trial judge concludes that visitation is in the best interests of the child, the judge must next consider whether a court order is necessary to serve the child's best interests or whether, instead, decisions regarding visitation should be left to the adoptive family. Adoption of Ilona, 459 Mass. at 63-64.
Here, the judge did not find that visitation was in the best interests of the child. The father has never been solely responsible for the child's care, and the child has never lived with him. Instead, she has lived with her preadoptive mother -- a close family friend of the mother -- for essentially her entire life (from the time she was discharged from the hospital following her birth in July, 2014,[5] to the time of the trial in April, 2016). The child has no special needs or medical issues, and her preadoptive placement is meeting her needs. At trial, the father acknowledged that the child was "stable" in her preadoptive home and that he was "fine" with the placement (at least until he obtained suitable housing). On appeal, the father confirms that "he does not want to disrupt the child's adoptive placement."[6]
The father's contact with the child consisted of one-hour monthly supervised visits from October, 2014, to March, 2016. There was no evidence of any other contact between the father and the child. While there was evidence that the child was willing to go to the father during some visits, there was also evidence that, at other visits, she was not. The Department of Children and Family social worker expressed concerns about the father's behavior during some visits. Moreover, the preadoptive mother does not support continued visitation, reporting that the child was exhausted from crying following visits with the father. On this record, we cannot reasonably conclude that the judge abused his discretion.[7] Adoption of Douglas, 473 Mass. at 1029 n.12.
Decree affirmed.

The father, who has (i) a long history of drug abuse, including a relapse during the pendency of this case, (ii) an extensive criminal history, which includes domestic violence against the mother, drug-related crimes, and crimes involving violence against others, and (iii) a demonstrated inability to maintain stable housing, does not challenge either the judge's finding that he is unfit or the termination of his parental rights.

Citing scientific articles discussing, inter alia, a "holistic family well-being standard," "family systems theory," and "human vulnerability theory," the father contends that the decision whether to order posttermination visits should not be governed by the best interests of the child standard. We disagree. See Adoption of Vito, 431 Mass. at 553.

The mother, who has struggled with substance abuse for years, admitted that she used cocaine repeatedly during the pregnancy. Following birth, the child remained in the hospital for twenty days due to withdrawal symptoms. The mother's parental rights were also terminated. She did not appeal.

There is no merit to the father's challenge to the judge's decision not to order posttermination visitation on the ground that there is no information in the record as to the race/ethnicity of the preadoptive mother and speculation that a continued relationship with individuals of the same race/ethnicity as the child may, in the future, affect the best interests analysis. See Adoption of Vito, 431 Mass. at 566.

We have considered the father's other arguments on appeal, including, inter alia, his claim that the judge ignored his compliance with certain service plan tasks, and find them to be without merit. See Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).