Following a trial in the Juvenile Court, the judge found the mother and the father unfit to care for their daughter, Norah, and issued decrees terminating their parental rights. The judge left the decision regarding any posttermination and postadoption visitation by the mother or the father to the discretion of the Department of Children and Families (department) or to the adoptive parents. On appeal, the mother and the father both claim that the evidence did not clearly and convincingly establish their parental unfitness, and they challenge the sufficiency of the judge's findings. The father additionally claims that the judge failed to consider whether posttermination and postadoption visitation would be in the child's best interests. We affirm.
1. Unfitness and termination of parental rights. The mother and the father both claim that some of the judge's findings are erroneous and that the findings are insufficient to establish their parental unfitness by clear and convincing evidence. We disagree.
A decision to terminate parental rights calls for a two-step analysis. See G. L. c. 210, § 3 ; Adoption of Nancy, 443 Mass. 512, 515 (2005). "To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests." Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012).
Here, the findings of fact and conclusions of law are "specific and detailed so as to demonstrat[e] that close attention has been given the evidence." Care & Protection of Martha, 407 Mass. 319, 327 (1990), quoting Care & Protection of Stephen, 401 Mass. 144, 151 (1987). Many of the parents' challenges stem from their dissatisfaction with "the judge's assessment of the weight of the evidence and the credibility of the witnesses," which is entitled to deference. Custody of Eleanor, 414 Mass. 795, 799 (1993). We see no abuse of discretion or clear error of law. See Adoption of Hugo, 428 Mass. 219, 224-225 (1998), cert. denied sub nom. Hugo P. v. George P., 526 U.S. 1034 (1999).
Prior to the department's involvement, the mother did not initiate early intervention services for the child for two months, even though the child's doctor had referred her for services because she showed signs of developmental delays and possible autism. The child did not begin receiving services until July, 2015, almost five months after the initial referral. In addition, the mother did not actively engage in the early intervention services with the child; it was the maternal grandmother who participated with the providers.[2] The mother's lack of involvement in the child's early intervention services and her relinquishment of parental responsibility to the maternal grandmother led to "a lot of missed opportunities" to address the child's needs, as the child required a higher level of care and stimulation than the maternal grandmother was able to provide.[3] It was also within the judge's discretion to find, based on the evidence, that the maternal grandmother was elderly and in poor health. The judge properly considered the child's developmental improvement after she was removed from the mother's custody. See Adoption of Terrence, 57 Mass. App. Ct. 832, 835 (2003).
The mother also continued to involve herself with individuals who were engaged in criminal drug activity inside her home and in the presence of the child.[4] It is clear from the record that both the mother's and the maternal grandmother's homes were the locations of drug-related criminal activity, as there were drug raids and evidence of drugs and drug paraphernalia. The judge found that the mother was unable to provide a stable home environment where the child would thrive.
The mother also failed to comply with the tasks assigned to her pursuant to the department's service plan. Evidence of a parent's failure to maintain and follow through on service plans is relevant to the determination of unfitness. See Adoption of Rhona, 63 Mass. App. Ct. 117, 126 (2003). Except for visitation, the mother did not engage in any services the department offered to her.[5] The mother did not attend or participate in therapy to address her relationship patterns and the constant presence of illicit drugs, demonstrate an understanding of the impact that removal had upon the child and the reasons for her removal, consistently attend visits with the child, complete a psychological evaluation with a parenting component, or complete a substance abuse evaluation. The mother did attend three parenting classes.
The mother does not claim that she completed her service plan tasks. Rather, she takes issue with the plan's requirement that she provide the department with a relapse prevention plan and that she participate in an intensive outpatient program (IOP). However, the mother's final service plan did not require the mother to complete an IOP and modified the requirement of a relapse prevention plan to require her to complete a substance abuse evaluation. The mother also claims that the department did not provide adequate services so that she could educate herself on the child's diagnosis and complete an appropriate parenting class. However, "a parent must raise a claim of inadequate services in a timely manner so that reasonable accommodations may be made." Adoption of Gregory, 434 Mass. 117, 124 (2001). The mother did not do so here, and we will not disturb the judge's decision on this ground. See Adoption of Ilona, 459 Mass. 53, 61 (2011) (even where services inadequate, judge must still rule in child's best interests).
The father claims that the judge erred in terminating his parental rights when his parenting was never called into question apart from his incarceration.[6] We disagree. The father's repeated incarcerations on drug-related charges throughout the child's life left him largely unavailable to parent her. See Adoption of Serge, 52 Mass. App. Ct. 1, 8 (2001) ("Physical unavailability of the parent to provide day to day care for the child ... was relevant evidence of unfitness"). The record indicates that the father's incarcerations were frequent and that he failed to address his serious drug-related criminal activity. The father also failed to complete most of the tasks assigned to him in the service plans. When he was not incarcerated, the father visited the child along with the mother, on whom he relied for transportation. The father did set up a drug and alcohol substance abuse program for himself, but he was arrested before he started the program.
In sum, the judge's determination that both of the parents were unfit was supported by clear and convincing evidence. The judge made detailed and thorough findings, supported by the record, and considered a "constellation of factors" to conclude that the mother and the father were unfit and that termination was in the child's best interests. Adoption of Greta, 431 Mass. 577, 588 (2000). Any additional claims of error are either without merit or the alleged error would be harmless given that the judge's findings regarding parental unfitness were otherwise amply supported by the evidence.
2. Visitation. The father claims it was an abuse of discretion to leave posttermination and postadoption visitation to the department's or the future adoptive parent's discretion. We disagree. After termination of parental rights, the decision regarding visitation is left to the judge, and "[w]here it is in the child's best interests ... a judge has broad discretion to grant posttermination or postadoption visitation." Adoption of Douglas, 473 Mass. 1024, 1027 (2016). "[I]n ordering posttrial visitation, the proper focus is on the best interests of the child and on parental unfitness, rather than the rights of the parent ...." Care & Protection of Georgette, 54 Mass. App. Ct. 778, 785 n.10 (2002), S.C., 439 Mass. 28 (2003). Here, there was no evidence of "significant existing bonds" between the child and the father such that the judge's order regarding visitation would be counter to the child's best interests. See Adoption of Vito, 431 Mass. 550, 563 (2000). There was no abuse of discretion.
Decrees affirmed.

The mother correctly points out that the judge erroneously found that the mother's failings amounted to "abandonment" of the child. See G. L. c. 210, § 3. The error, however, was harmless. See Adoption of Helen, 429 Mass. 856, 856 (1999) (error in findings harmless where conclusion of current parental unfitness amply supported). The judge's focus was on the mother relegating her parental responsibilities to the maternal grandmother while the mother "was more interested in her personal life."

For example, evidence was introduced that the maternal grandmother had "difficulty handling a two year old with autism." The maternal grandmother would "gate" the child in a room and place her in front of the television, and although the grandmother would take the child on walks in a stroller, the child did not play outside because the "grandmother [could] not manage her behavior and activity level."

The mother is correct that there is no evidence in the record that the mother was actively using drugs, but there is evidence to support the mother's failure to address her inability to separate herself and the child from drug activity, which is how the department became involved with the family initially. The mother was arrested on drug-related charges one month prior to the termination trial, and the judge was warranted in drawing a negative inference from the mother's assertion of her right, under the Fifth Amendment to the United States Constitution, to refuse to answer questions regarding the arrest. See Custody of Two Minors, 396 Mass. 610, 617 (1986) ("the privilege against self-incrimination applicable in criminal proceedings, which prevents the drawing of a negative inference from a defendant's failure to testify, is not applicable in a child custody case").

The mother's visitation was mostly consistent. However, she admitted that she was often thirty to forty-five minutes late for a one-hour visit.

At oral argument, the father's counsel argued that the father was not challenging the finding of his unfitness, nor was he seeking custody of the child. Rather, he sought a remand of the case for a determination of posttermination and postadoption visitation for himself.